UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

MASCO CORPORATION,                       )
            Plaintiff,                        )
                             )
     vs.                                       )           1:09-cv-0500-RLY-TAB
                             )
PETER A. PROSTYAKOV,                     )
            Defendant.                        )

**ENTRY ON PLAINTIFF'S MOTION TO STAY ARBITRATION
AND DEFENDANT'S MOTION TO DISMISS OR STAY**

     The combatants here, Masco Corporation and its former employee, Peter

Prostyakov, have fought each other tooth and nail through arbitration, litigation in this

district court, an appeal to the Seventh Circuit and, after affirmation on appeal, a

subsequent reopening of the lawsuit to allow satisfaction of a more than $700,000

judgment confirming a 2005 arbitration award in favor of Prostyakov.  The basis for the

arbitration award was the arbitrator's determination that Masco had violated a settlement

agreement entered into by the parties in 1996 when Prostyakov ceased being employed by

Masco.  With a satisfied judgment, one might think the bout between the two would end;

and yet, the dispute continues with the current fight venued both in this court and in an

arbitration proceeding being pursued through the International Centre for Dispute

Resolution ("ICDR").  Masco believes its satisfaction of the earlier judgment ended the

dispute.  Prostyakov believes he has suffered an additional wrong as a result of Masco's

violation of the terms of that 1996 Settlement Agreement and has filed the arbitration request with the ICDR pursuant to the agreement's arbitration provision.  Masco responded by filing this lawsuit, which seeks a declaratory judgment to the effect that Prostyakov's arbitration request is an effort to revisit issues which were the subject of the original arbitration.  Masco also seeks an injunction prohibiting Prostyakov from re-arbitrating the 2005 arbitration award.

Currently before the court are Masco's Motion to Stay Arbitration (Docket # 8) and  Prostyakov's Motion to Dismiss or Stay (Docket # 13).  Masco has also filed a summary judgment motion, but this entry does not reach that motion.

**Factual Background**

The circumstances which caused the employment relationship between Masco and Prostyakov to end have long lost their relevance, and a detailed discussion of the events which transpired leading up to and following Prostyakov's separation would serve only to duplicate the comprehensive efforts of Judge Kanne in *Prostyakov v. Masco Corp.*, 513 F.3d 716 (7th Cir. 2008), which affirmed Judge Sarah Evans Barker's confirmation of the arbitration decision in earlier litigation before this court which was initiated by Prostyakov.  Rather, this court refers the reader to the "History" portion of that earlier appellate decision for detail and submits only a shortened version of the facts to set the stage for the latest squabble between the parties and its consequences.

2

Prostyakov was made the Managing Director and Agent of Masco's Moscow-based office in 1995.  Masco's CEO issued a company directive removing Prostyakov from that position in April 1996.  Masco and Prostyakov then negotiated the terms of his departure which resulted in the two sides entering into a settlement agreement on June 18, 1996.  However, Masco did not immediately return Prostyakov's "Labor Book", a document issued to each Russian citizen who enters the labor market which sets forth that person's employment history.  A Russian employer retains the Labor Books of its employees, recording in the book, among other things, the basis under the Russian Labor Code for dismissal when an employee separates.

Following his separation from Masco, Prostyakov promptly located another position with a bank in Moscow, but was unable to start work on the originally agreed date due to Masco's failure to provide him with his Labor Book.  When he was finally given the Labor Book, he found that it contained a statement that he had been fired from his position, which was in conflict with the terms of the settlement agreement.  After being given Prostyakov's Labor Book with the entry indicating he had been fired, the bank terminated its new relationship with Prostyakov, indicating it could not retain someone in a supervisory position who had been fired from his last job for unclear reasons.  Prostyakov learned from a co-worker at Masco that his Labor Book had been intentionally falsified and post-dated by his successor.

Prostyakov quickly sought a corrected entry from Masco, but his request was

ignored.  He then demanded that Masco enter into arbitration to resolve the dispute over

the entry in his Labor Book, but it again ignored him.  Unemployed and unsuccessful in

his efforts to obtain a correction to his Labor Book, Prostyakov sought the help of the

Russian courts in January 1997.  For the most part, Masco ignored those efforts as well.

It was not until 2002 that Prostyakov was able to obtain a default judgment against Masco

based on a labor code violation for the fraudulent Labor Book entry.  Armed with the

Russian court judgment, Prostyakov filed an arbitration demand with the American

Arbitration Association ("AAA"), claiming Masco had breached the 1996 Settlement

Agreement by placing a fraudulent entry in his Labor Book.

       The arbitration provision of the parties' 1996 Settlement Agreement reads in

relevant part as follows:

> All disputes, controversies or differences which may arise between the
> parties, out of, in relation to, or in connection with this Agreement or for the
> breach thereof, which cannot be settled by the parties themselves, shall be
> settled finally and bindingly by arbitration, to be held in the Indianapolis,
> Indiana metropolitan area.  The commercial rules of the American
> Arbitration Association shall apply and shall govern the conduct of any
> such arbitration; however, any such arbitration shall be conducted privately
> by the parties and the arbitrator shall be an attorney chosen by mutual
> agreement of the parties. ... Any award or decision of the arbitrator shall be
> deemed final, binding and enforceable through entry and enforcement in
> any court of competent jurisdiction, and the parties to this Agreement
> hereby agree to be subject to the jurisdiction of such court. ... the parties
> agree that the Federal Arbitration Act shall govern the interpretation and
> enforcement of this paragraph 6.

       Once the AAA arbitration request was filed, Masco stopped ignoring Prostyakov

and began a no holds barred defense, including efforts to deny arbitration jurisdiction and the assertion of a counterclaim seeking the attorney fees it expended in connection with Prostyakov's pursuit of Masco in the Russian courts, which pursuit was prohibited in the settlement agreement.  Eventually, the matter was heard by a mutually agreed upon arbitrator, Max Hittle, Jr., who found in favor of Masco on its counterclaim, awarding it over $62,000 in attorney fees.  Nevertheless, Hittle also ruled against Masco on Prostyakov's claim for damages as a result of the breach of the settlement agreement and awarded Prostyakov more than $789,000 in damages, costs, expenses and attorney fees and ordered that Masco's CEO issue an executive order annulling his 1996 declaration unilaterally removing Prostyakov from his position and affirmatively stating that the company agrees that his departure was by mutual agreement and effective August 15, 2005.

Prostyakov then filed the first lawsuit between these parties in this court, wherein he sought a confirmation of the arbitration award.  Masco opposed the confirmation and moved to vacate the award, again challenging both the jurisdiction of the arbitrator and the substance of the ruling.  However, Judge Sarah Evans Barker of this court ruled that the award should be confirmed.  Masco appealed and Prostyakov moved for sanctions to be imposed for a frivolous appeal.  In an opinion which was highly critical of Masco for wasting the appellate court's time, the Seventh Circuit affirmed Judge Barker's confirmation of the arbitration award, but denied Prostyakov's sanction request, stating

that he was adequately protected by the attorney fees provision in the settlement agreement and chastising Masco ahead of time if it did not promptly pay Prostyakov what it owed him, including the attorney fees.

Apparently taking the Seventh Circuit's preventive scolding measure seriously, Masco made payments to Prostyakov to cover the arbitration award, including the attorney fees which had been awarded, shortly after the appellate decision was rendered in January 2008.  After discussions with Prostyakov's counsel, Masco also tendered an amount to cover additional attorney fees incurred by Prostyakov following the arbitration award which amount it believed the parties had reached agreement upon.  Not missing an opportunity to prolong the fight, Prostyakov refused to accept Masco's tender of $33,386.59.  Despite e-mail exchanges and negotiations which lead Masco to believe an agreement had been reached, Prostyakov claimed that he was due more than the $33,386.59 which Masco was attempting to have his legal counsel accept for his attorney fees.  Instead, Prostyakov claimed that he was owed post-arbitration award interest, expenses, costs, post-judgment interest, billed attorney fees as well as contingent attorney fees he paid in excess of the billed fees.  All of this was far in excess of the $33,386.59 tendered by Masco.

In August 2008, Masco moved the district court under Fed R.Civ.P. 60 to reopen the litigation and allow it to make payment of $33,386.59 and have the entire judgment recorded as satisfied.  After assessing the arguments made by Prostyakov regarding his

entitlement to additional interest and attorney fees, Judge Barker found that the parties had earlier reached an agreement on the amount of additional attorney fees due and that the $33,386.59 tendered by Masco reflected that agreement.  She denied Prostyakov's request for additional amounts, granted Masco's motion, and directed the Clerk of the Court to accept Masco's tender and distribute it in satisfaction of the earlier judgment.

In his supporting brief addressing Masco's motion to reopen the earlier litigation, Prostyakov argued that Masco continued to violate the 1996 settlement post-arbitration and opined that another arbitration was in the offing if some agreement could not be reached on the total owed to him.  This argument foretold the current situation.  After Judge Barker entered her order closing the previous litigation in December 2008, Prostyakov filed his pending arbitration request with the ICDR.  Masco has attempted to convince the ICDR that this second arbitration is precluded by the earlier judgment, but its efforts have met with no success.  As a result, it filed the lawsuit now before the court in an effort to avoid what it claims should be a prohibited second bite at the apple by Prostyakov.  Currently, the parties base their arguments on the other's failure to honor that part of the 1996 Settlement Agreement which states that the decision of an arbitrator is final and binding.  Masco frames the issue as whether or not the earlier arbitration award constituted the complete and final determination with regard to any claim by Prostyakov for amounts owed him by Masco as a result of the company's handling of his Labor Book.  Prostyakov frames the issue as whether or not Masco's earlier attempt to

vacate or reverse the original arbitration award in court was, in and of itself, a breach of the finality provisions of the arbitration clause in the 1996 settlement agreement, thereby entitling Prostyakov to pursue additional damages through another arbitration.

**Discussion**

The first question of law this court is faced with is whether it has the authority to determine the arbitrability of the dispute raised in Prostyakov's request for arbitration. That issue is raised in Masco's Motion to Stay Arbitration (Docket # 8), and is the easiest of the questions before the court.  Indeed, this court <u>can</u> determine the arbitrability of the dispute. "Unless the parties clearly provide otherwise, the question of arbitrability is properly decided by a court, not the arbitrator."  *International Brotherhood of Electrical Workers, Local 21 v. Illinois Bell Telephone Co.,* 491 F.3d 685, 687 (7th Cir. 2007).

Prostyakov claims that the arbitration provision of the 1996 Settlement Agreement provides for the arbitrator to determine arbitrability because it refers to the rules of the AAA as governing the arbitration and because it also states that the Federal Arbitration Act ("FAA") applies.  The AAA rules for commercial arbitration set forth procedural guidelines for raising a challenge to arbitrability within the arbitration.  If raised it must be pursued when the answer statement is provided to the arbitrator, who, according to the rules, has the power to rule on his own jurisdiction.  The FAA provides for a stay of any court proceedings addressing an issue for which a party has made a timely request for

8

arbitration under an enforceable agreement to arbitrate.  9 U.S.C. §3.  However, neither the AAA rules nor the litigation stay afforded by the FAA require that the issue of arbitrability be decided by the arbitrator.

Acceptance of a requirement that an arbitration be conducted under AAA rules is not the type of clear agreement to submit the issue of arbitrability to the arbitrator which is  necessary for a party to waive its right to contest arbitrability in the courts.  *See Oblix, Inc. v. Winiecki*, 374 F.3d 488, 490 (7th Cir. 2004).  Nor is the fact that a stay may be obtained when arbitration is being pursued indicative of any agreement that an arbitrator be allowed to decide if the issue is arbitrable to begin with.  The limited role of the courts, to determine if the parties reached an agreement to submit the underlying dispute to arbitration, is consistent with the provisions of the FAA.  *Galt v. Libbey-Owens-Ford Glass Co.,* 376 F.2d 711, 714 (7th Cir. 1967).  Accordingly, it is properly a court's role to determine if the issue raised by Prostyakov's arbitration request is one which the parties agreed to arbitrate.

Nevertheless, according to Prostyakov, this court must dismiss Masco's action even if it is this court's role to determine arbitrability, because it lacks personal jurisdiction over him and he has avoided service of process.  This argument is a non-starter and his Motion to Dismiss or Stay (Docket # 13) must be denied.

Prostyakov argues that the court can not assume personal jurisdiction over him

because he is a Russian citizen and Masco has failed to serve him personally during his visits to the United States.  However, Prostyakov is no stranger to Indiana.  He and his wife own two homes in Carmel, and he holds the position of President of a non-profit foundation he helped establish in the United States.  He returns to Indiana often.  In fact, his own affidavit describes his need to purchase an Indiana home to be the result of his frequent visits to this state.  Further, he agreed in the settlement agreement that Indiana law would apply and that any arbitration would be held in Indiana and could be enforced by courts located here.

A federal district court may maintain personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction.  *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 779 (7th Cir. 2003). Specific jurisdiction is applicable when the controversy arises out of the defendant's contacts with the forum state.  *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).  It is undisputed that Prostyakov has requested an arbitration which, pursuant to the 1996 agreement, must occur in the Indianapolis, Indiana metropolitan area.  Further, the 1996 settlement states that the parties agree to be subject to the jurisdiction of any court competent to enforce any award made in such an arbitration. Prostyakov's assent to such a venue for the arbitration amounts to his consent to the jurisdiction of this or any other court in the state which could compel arbitration or enforce an award.  *See Doctor's Associates, Inc. v. Stuart*, 85 F.3d 975, 979 (2nd Cir.

1997).  Due process principles are not offended by the notion that Prostyakov could be

sued in Indiana to stop an arbitration being conducted in Indiana - which arbitration he

requested.  Consequently, specific jurisdiction over Prostyakov is applicable here.

Even if specific jurisdiction were unavailable, Prostyakov's ownership of two

homes in Indiana, his frequent visits to the state and his past litigation in this court,

prosecuting his claim for confirmation of the original arbitration award, are numerous and

continuous enough to warrant this court's exercise of general jurisdiction.  General

jurisdiction may be exercised where the dispute does not arise out of the defendant's

contacts with the forum state, but his contacts with the state are so continuous and

systematic that he should reasonably anticipate that he could be haled into its courts to

answer legally for his actions.  *Helicopteros Nacionales,* 466 U.S. at 415.

Finally, Masco's service of the complaint and summons via certified mail, a

processors leaving of copies at Prostyakov's two Indiana addresses, and the personal

service on his attorney, are sufficient to comport with the due process requirements

codified by the Indiana Trial Rules.  *See Swaim v. Moltan Co.*, 73 F.3d 711, 720-21 (7th

Cir. 1996).  Pursuant to Fed.R.Civ.P. 4(e)(1), in the absence of a specific federal statutory

provision, service of process is governed by the law of the state in which a federal district

court sits.  Indiana's Trial Rule 4.1 sets forth the guidelines for service of process on

individuals.  Service "may be made" by (1) sending a copy of the summons and

complaint by certified mail to an individual's residence, (2) delivering a copy of the

11

summons and complaint to him personally, (3) "leaving a copy of the summons and

complaint at his dwelling house or usual place of abode," or (4) serving the individual's

agent.  Ind. T.R. 4.1(A).  The rules also place a duty of cooperation on an individual upon

whom service is being attempted.  Ind. T.R. 4.16(A).

Equally important, Indiana's Trial Rules also codify the constitutional due process

requirements, stating:

> No summons or the service thereof shall be set aside or be adjudged
> insufficient when either is reasonably calculated to inform the person to be
> served that an action has been instituted against him, the name of the court,
> and the time within which he is required to respond.

Ind. T.R. 4.15(F).  Thus, an Indiana court acquires personal jurisdiction through any

method of service of summons that comports with due process, and a court should not

simply set aside a summons on some technical deficiency if it was reasonably calculated

to inform the defendant of the cause that has been instituted against him and how he is to

respond, in some instances even if the defendant was not actually informed.  *Swaim*, 73

F.3d at 720-21.


In the present case, the fact that Prostyakov, while in Indiana, has purposefully

evaded or refused service attempts at his Indiana home, serves as no basis for finding that

Masco has not effectively served him.  It has twice attempted to serve Prostyakov by

certified mail.  One of the Return of Service cards which accompanied the certified mail

sent to Prostyakov's home on Crescent Drive in Carmel, Indiana, was returned with a

signature indicating that someone at the home accepted the documents.  Masco employed

12

a process server who made numerous attempts to personally serve Prostyakov at his

Indiana residences and left copies of the suit papers at both of the homes he owns in

Carmel, Indiana. On one occasion, the process server could hear people within the home,

but no one answered the door, necessitating his posting the papers on the property.

Prostyakov admits to avoiding service and attempts to explain his dodging of the

same by stating that he was trying to avoid engaging in *ex parte* communications with

Masco.  In his affidavit he states:

> Steve Plopper is my attorney for arbitration of my claims against Masco as
> well as for representing me in the District court.  I knew I was not supposed
> to initiate any *ex parte* communication with Masco's attorneys and I
> presumed Masco would follow the same rules; therefore I decided I should
> not receive any letter from them addressed to me directly.

The credibility of such a declaration is inescapably questionable; nevertheless, it offers

little refuge even if its veracity were certain, because, in effect what Prostyakov is

admitting is that his attorney was authorized to accept service on his behalf, and there is

no dispute that his attorney was properly served or that his attorney informed Prostyakov

of the lawsuit and its subject.  Prostyakov's attempts to evade service will not be

rewarded by this court issuing a determination that the service which was effected did not

comport with his due process rights.

Finally, in order to make a decision on arbitrability, this court must fully

understand the claim Prostyakov seeks to advance through arbitration and its relationship,

if any, to the proceedings previously conducted by Mr. Hittle and this court.  This court is

13

informed that the deadline to select an arbitrator is October 23, 2009, leaving insufficient time for the court to review and digest the respective arguments and relevant facts, as set forth in the parties' briefing of Masco's summary judgment motion. Consequently, it makes sense for this court to order a stay of the arbitration proceedings until such time as it can, with confidence, provide an informed determination as to whether those proceedings are an attempt by Prostyakov to revive issues which were put to bed by the previous judgment of this court or whether they should proceed to address claims which are independent of those Prostyakov raised previously.

**Conclusion**

For the reasons discussed in this entry, this court is the proper authority to determine the issue of whether the claims raised by Peter Prostyakov in ICDR arbitration proceedings identified as #50181T0016109 are arbitrable, and it has personal jurisdiction over Mr. Prostyakov in connection with this lawsuit. Accordingly, Defendant's Motion to Dismiss or Stay (Docket # 13) is **DENIED** and Plaintiff's Motion to Stay Arbitration (Docket # 8) is **GRANTED**. The aforementioned arbitration proceedings pending before the ICDR are **ordered stayed** until such time as this court resolves Masco's complaint in this matter.

**SO ORDERED** this 19th day of October 2009.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

14

Electronic Copies to:

John Kenyon Henning IV
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
john.henning@ogletreedeakins.com

Nicholas E. Plopper
STEPHEN PLOPPER & ASSOCIATES
nick@sploplaw.com

Stephen Edwards Plopper
STEPHEN PLOPPER & ASSOCIATES
splopper@sploplaw.com

Kenneth B. Siepman
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
kenneth.siepman@odnss.com