UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MASCO CORPORATION, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:09-cv-0500-RLY-TAB |
| | ) | |
| PETER A. PROSTYAKOV, | ) | |
| Defendant. | ) | |

### ENTRY DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND LIFTING STAY OF ARBITRATION

As explained in this court's order of October 19, 2009, the parties to this lawsuit have a long and cantankerous history of litigation in this district. In 2005, Defendant, Peter Prostyakov ("Prostyakov"), was the beneficiary of a sizeable arbitration award which, upon petition of Prostyakov, this court and the Seventh Circuit Court of Appeals upheld. After the appellate court affirmed this court's confirmation of the arbitration award, the parties went back and forth on the amount of money Plaintiff, Masco Corporation ("Masco"), needed to pay to satisfy both the arbitration award and the requirement of the underlying agreement, that Masco indemnify Prostyakov for the attorney fees and costs stemming from the arbitration and ensuing enforcement litigation.[1]

---

[1] As the court indicated in its Order of October 19, 2009, the employment dispute which spawned the parties' written settlement agreement and its mandatory arbitration provision along with the subsequent actions of Masco, which the arbitrator found to violate that settlement agreement, are best described in the Seventh Circuit's reported decision in *Prostyakov v. Masco Corp.,* 513 F.3d 716 (2008). This court's order of October 19, 2009, also provides a short summary of the relevant facts with regard to Prostyakov's employment by Masco as the Managing Director of its Russian offices in Moscow, their agreed written resolution regarding his departure from that position and the subsequent breach of that agreement by Masco, which

On October 28, 2008, in response to a motion filed by Masco, Judge Sarah Evans Barker of this court entered an order finding that the judgment she had entered against Masco confirming the earlier arbitration award was satisfied after Masco deposited $33,386.59 with the court. The satisfaction of judgment included the funds deposited with the court as well as $995,134.68 which Masco had remitted to Prostyakov earlier. Judge Barker ordered disbursement of the court-held funds to Prostyakov, and refused to adopt Prostyakov's interpretation of the Seventh Circuit's decision affirming her earlier ruling, which appellate decision he claimed supported his entitlement to additional funds.

Subsequently, Prostyakov submitted a second arbitration request to the International Centre for Dispute Resolution ("ICDR"), claiming to have suffered additional damages as a result of Masco's ill-fated attempt to fight the earlier arbitration award. Prostyakov characterizes Masco's effort to fight the award as a separate violation of the underlying settlement agreement. According to Prostyakov, Masco failed to honor that part of the settlement agreement which declares that the decision of the arbitrator with regard to any dispute raised under the agreement was to be treated as final and binding. Further, Prostyakov claims that the delay in satisfaction of the award scuttled the efficacy that award.

In response to the request for arbitration and the ICDR's decision to proceed with

---

breach was the subject of the earlier arbitration in Indianapolis. The facts as set forth in the Seventh Circuit's decision and this court's earlier order are deemed a part of this order as well.

this second arbitration request, Masco filed this lawsuit. Masco claims that Prostyakov is attempting to take a second bite at arbitrating the damages issue previously determined as a part of the 2005 arbitration award. Masco seeks a declaratory judgment as well as an injunction permanently barring Prostyakov from "re-arbitrating" the substance of the 2005 arbitration award.

This court's order of October 19, 2009, stayed the current arbitration pending before the ICDR, allowing it time to review and fully digest the arguments raised by each side with regard to the arbitrability of the issues raised in Prostaykov's Notice of Arbitration and any preclusive effect of Arbitrator Hittle's August 2005 award and/or this court's order in the ensuing enforcement litigation finding that its judgment had been satisfied.

**The Arbitration Provision**

In April 1996, the President and CEO of Masco issued a directive addressed to the officials of the Russian Republic which stated that Prostyakov was being removed from his position as Director of Masco's Moscow office. Prostyakov and Masco then engaged in negotiations to end his employment and the same were reduced to writing in June of 1996. After leaving Masco, Prostyakov accepted a position with a Russian Bank, but he

needed to provide the bank with his "Labor Book"[2] prior to starting in his new position. His requests to Masco for the return of his Labor Book went unheeded for more than a month and when it was finally returned to him in August 1996 he found that the entry regarding his departure from Masco stated that the company had dismissed him. When he presented the book to his new employer, the bank altered its earlier hiring decision and told him they could not employ someone in a key position who had been dismissed without explanation from his previous position.

As a part of the June 1996 Settlement Agreement and Release of Claims entered into by Masco and Prostyakov with respect to the termination of Prostyakov's employment and consulting relationship with Masco, the following arbitration provision was included:

> 6. **Arbitration**
>
> All disputes, controversies or differences which may arise between the parties, out of, in relation to, or in connection with this Agreement or for the breach thereof, which cannot be settled by the parties themselves, shall be settled finally and bindingly by arbitration, to be held in the Indianapolis, Indiana metropolitan area. The commercial rules of the American Arbitration Association shall apply and shall govern the conduct of any such arbitration; however, any such arbitration shall be conducted privately by the parties and the arbitrator shall be an attorney chosen by mutual

---

[2] The "Labor Book" is a creation of Russian Labor Law and each member of the Russian workforce is issued one. While employed, a Russian employee's Labor Book is kept by his employer. Upon termination of the employment relationship, the employer is required to note the reason for the employee's departure in the employee's Labor Book, and then return it to the former employee.

agreement of the parties. If the parties cannot timely agree upon a single arbitrator, each party shall designate one arbitrator, and both of those arbitrators shall pick a third, neutral arbitrator. Such third neutral arbitrator shall alone arbitrate the dispute. Any award or decision of the arbitrators shall be deemed final, binding and enforceable through entry and enforcement in any court of competent jurisdiction, and the parties to this Agreement hereby agree to be subject to the jurisdiction of any such court. The costs and fees of such arbitration shall be paid by the losing party. The parties agree that the Federal Arbitration Act shall govern the interpretation and enforcement of this paragraph 6.

### The First Arbitration Claim & Award

Despite Masco's and Prostyakov's written agreement with regard to his departure from the company being by mutual agreement, Prostyakov's replacement at the Moscow office had subsequently directed that an entry be made in Prostyakov's Labor Book indicating that he was involuntarily dismissed. This representation not only ran counter to the terms of the written agreement and cost Prostyakov his job with the Russian Bank, but, according to Prostyakov, this fraudulent representation in his Labor Book along with the delay in its return prevented him from gainful employment in Russia and required him to drain sizeable assets he had accumulated in order to maintain his lifestyle. After filing claims against Masco in the Russian court system, Prostyakov eventually sought to arbitrate his claim pursuant to the arbitration provision in his settlement agreement with Masco.

Following an arbitration proceeding in Indianapolis, Arbitrator, Max Hittle, Jr. (Arbitrator Hittle), issued his Arbitration Award. The August 15, 2005, Arbitration Award reported that Prostyakov described the nature of his arbitration claim as one for the breach of the 1996 Settlement Agreement and, in an amended arbitration complaint, he claimed that Masco's conduct was also fraudulent and libelous, causing him emotional distress in addition to monetary damages. Masco disputed all of Prostyakov's claims, and made a counterclaim for its expenses associated with defending the Russian court proceedings. It also challenged the arbitrator's jurisdiction and the arbitrability of Prostyakov's claims; however, the arbitrator found that jurisdiction was proper and Prostyakov's claims were arbitrable (except those claims Prostyakov raised in a post hearing brief).

Based on the evidence presented to him, Arbitrator Hittle found Masco liable for the "unlawful and retaliatory" entry made in Prostyakov's Labor Book and for the delay in its return to him following the execution of the settlement agreement. He also determined that arbitration was the exclusive remedy agreed to by Masco and Prostyakov and that Prostyakov's initial resort to the Russian court system was in violation of that exclusivity provision. He awarded Masco $62,521.85 on its counterclaim for attorney fees expended in connection with the Russian lawsuit, but Prostyakov was awarded

$630,000 in damages, representing three and one-half years of his salary at Masco.[3] In addition to the damages he awarded Prostyakov, the arbitrator awarded Prostyakov $128,196.74 for attorneys fees and expenses, and $25,637.07 for arbitration and travel expenses. Finally, Arbitrator Hittle ordered Masco's Chairman and CEO to annul his original April 1996 directive regarding Prostyakov's "removal" with an Executive Order of "current date" which acknowledges the termination of Prostyakov's employment and consulting relationship with Masco "this ____ day of August, 2005, pursuant to Mutual Agreement." All of the remedies ordered by the arbitrator were to be complied with within thirty days.

## Enforcement Action

Thirty days elapsed without Masco's Chairman issuing the Executive Order required by the Arbitration Award or otherwise complying with the terms of the award. On September 26, 2005, Prostyakov filed an action for enforcement of the Arbitration Award in this court. Masco fought the enforcement of the award, arguing that the award

---

[3]Paragraph 92 of Arbitrator Hittle's Conclusions of Law states:
Prostyakov is entitled to recover three and one-half years of lost salary under his Employment contract with the Moscow Federal Industrial bank, at $180,000 per year, for a total of $630,000. Three and one-half years represents the reasonable amount of elapsed time for Prostyakov to have filed, prosecuted and appealed his arbitration claims herein to their final conclusion, which he should have done at the beginning of this dispute in August 1996. After three and one-half years, Prostyakov would have been required to mitigate his damages by seeking other employment with his corrected Labor Book, and he would not be entitled to collect damages from Masco thereafter.

should be vacated and that it had three months under the Federal Arbitration Act ("FAA") in which to seek a vacation of the award. The challenge to the Arbitration Award was based on a lack of jurisdiction or arbitrability as well as Arbitrator Hittle's use of Russian law in reaching his conclusions.

In the end, Judge Sarah Evans Barker found that the Arbitration Award should be enforced and the Seventh Circuit affirmed her decision, chastising Masco for asking the federal courts to review arbitral awards for legal or factual error. In its opinion, the appellate court stated: "[W]e will neither deprive parties of the benefits, nor shield them from the pitfalls, that arise when they agree to settle their disputes outside of the courts' purview." *Prostyakov v. Masco Corp.*, 513 F.3d 716, 723 (7th Cir. 2008). As noted by the appellate court, the only issue appropriately raised in a challenge to an arbitration award is whether the arbitrator exceeded his powers and, even then, it is an extremely limited review conducted simply to assure that the arbitrator at least attempted to interpret the agreement, not whether his interpretation is flawed. *Id.* Arbitrator Hittle did not exceed his authority in this instance and, in addition, the Seventh Circuit found that he had offered a reasoned basis for his decisions. *Id*. at 724-25.

Prostyakov sought sanctions against Masco for bringing a frivolous appeal. The Seventh Circuit indicated that it found Prostyakov's argument for sanctions appealing because of Masco's "legally meritless" arguments, but would not award a requested sanction of attorney fees because the 1996 Settlement Agreement provided sufficient

8

protection to Prostyakov. The uncommon manner in which the appellate court expressed its opinion on the sanctions issue is worth quoting.

> [W]e think it is unnecessary in this case to award attorneys' fees and costs. Requiring the payment of attorneys' fees and costs as a sanction serves two purposes: (1) "to protect the court from the burdens of fruitless litigation"; and (2) to prevent "the prevailing party from having to bear the cost of defending against utterly meritless contentions." *Bacon v. Am. Fed'n of State, County & Mun. Employees Council, # 13*, 795 F.2d 33, 34 (7th Cir. 1986). We will, for this moment only, look past the inconvenience we have endured while addressing Masco's appeal, and instead will focus on whether the sanction would benefit Prostyakov. And it is here that we conclude that Prostyakov already is well protected by the Settlement Agreement's indemnification clause, which reads, in pertinent part, that "[i]n the event of a breach of this Agreement, the Breaching party will indemnify and hold the other harmless from any and all resulting claims, *including attorney's fees and costs*." (Emphasis added.) In other words, Masco-as the breaching party-already has agreed to reimburse Prostyakov for attorneys' fees and costs stemming from the litigation before both the district court and us. We need not circumvent this contractual arrangement by awarding Prostyakov a windfall of further fees and costs.
>
> We trust that Masco will promptly contact Prostyakov and pay what it owes him. We hope our faith is not misplaced; our opinion on this matter could change drastically if Masco continues to prolong this dispute needlessly. *See Prod. & Maint. Employees' Local 504*, 916 F.2d at 1163; *PaineWebber Inc*., 843 F.2d at 1052-53; *see also Redwood v. Dobson*, 476 F.3d 462, 470 (7th Cir. 2007) (noting that sanctions may include censure for conduct unbecoming of bar). We might not be so willing to overlook whatever future inconvenience we would have to endure if we are called, once again, to address this matter, which should have ended long ago. *See Bacon,* 795 F.2d at 34.

*Id*. at 726-27.

## Reopening of Case to Allow Satisfaction of Judgment

As was noted earlier, following the Seventh Circuit's decision, the parties began negotiating the amount to be paid by Masco in order to satisfy both the judgment and the directive contained in the decision from the Seventh Circuit that Masco promptly pay any attorney fees and costs that would be owed to Prostyakov pursuant to the indemnity language contained in the 1996 Settlement Agreement. Initially, that process went relatively smoothly with counsel for Masco contacting counsel for Prostyakov the day after the appellate decision was rendered requesting that Prostyakov provide Masco with an itemized statement of fees and costs as soon as possible. Prostyakov's counsel, Stephen Plopper ("Plopper"), responded within the week, setting forth a calculation of what amounts were owed by Masco to satisfy the award, pay post-judgment interest, and cover the attorney fees and expenses incurred subsequent to the Arbitration Award. That total was $1,099,594.40. Plopper also indicated that Prostyakov agreed that he would need to pay Masco $69,221.15 in order to satisfy the arbitrator's counterclaim award plus interest.

Counsel for Masco responded to Prostyakov's counsel with an e-mail dated January 31, 2008, in which he pointed out what he deemed to be an incorrect computation of interest in the amount of $38,246.72 and offered only $10,000 toward unsubstantiated requested expenses of $14,266.71, which he agreed Masco would pay in total if substantiation were provided. The remainder of the e-mail raised procedural issues with

regard to the transfer of funds and noted that the size of the required check would necessitate certain signatures which might delay its issuance into the following week, but provided the following assurance to Plopper:

> So that there is no misunderstanding, except for the $4,266.71 of unsubstantiated expenses which Masco would pay if substantiated, Masco is paying all of the fees and expenses demanded in the January 28, 2008, letter, except for the incorrectly calculated interest charges.

Plopper responded later that day, indicating that the delay in issuing the check and the Executive Order was unacceptable and would result in his filing a Petition for Rehearing with the Seventh Circuit on behalf of his client. In addition, he indicated that over $30,000 in attorney fees which he had previously said he would waive on condition of prompt payment would now need to be paid.

A flurry of e-mails were then exchanged over the course of a week or so, in an effort to complete the payment of the award, attorney fees and costs. The details were not ironed out, and on February 5, 2008, Prostyakov filed a Petition for Rehearing with the Seventh Circuit. The following day Masco wire transferred $995,134.68 to Prostyakov, and offered to have an Executive Order signed by its new CEO delivered promptly. For accounting reasons, the parties also exchanged checks for $66,400.76 in order that Prostyakov's obligation to pay the counterclaim award was negated. In e-mail exchanges, Plopper acknowledged his client's receipt of the wire transfer, the exchange of checks

and agreed to waive the more than $30,000 in fees as originally outlined.  His e-mails of February 6 and 7 set forth the remaining details still to be ironed out, including his follow-up with authorities who would know whether Russian law would allow for an Executive Order which was not signed by the Executive Chairman who had issued the original directive to Moscow authorities.  His total for the remaining amounts claimed due and owing to his client was $36,540.50.

In response to Plopper's e-mail correspondence, counsel for Masco sent an e-mail confirming Plopper's waiver of the more than $30,000 in attorney fees and attached a copy of a notarized Executive Order which set forth the language required by the Arbitration Award and was signed by both the new CEO and the Executive Chairman who had authored the original directive.  This e-mail also requested that Prostyakov withdraw his Petition for Rehearing, which Petition was withdrawn the following day, February 8, 2008.  Also on February 8, 2008, Masco's counsel e-mailed Plopper noting its agreement to pay $28,698.74 as a final payment and pointing out what Masco interpreted as miscalculations in the amount that Plopper had determined was still due and owing his client in his e-mail of the previous day.  In March, Plopper responded with his own new calculation of $33,286.59 as the amount remaining unpaid by Masco.

The next written communication in the record before this court is an April 14, 2008, letter from attorney Jeffrey Gaither ("Gaither") of Bose McKinney & Evans to the new President and CEO of Masco, in which Mr. Gaither informs of his representation of

Peter Prostyakov and makes a demand of $44,855,762.99 to Masco covering not only underpayment of amounts claimed to be owed in connection with the Arbitration Award and subsequent litigation, but also further damages for the delay of some two and one-half years between the time the arbitrator ordered that Masco issue the corrected Executive Order and when the order was actually issued in February 2008.  Gaither noted in his letter that following the August 2005 Arbitration Award Prostyakov had suggested that Masco issue the corrected Executive Order while still appealing its obligation to do so as well as the monetary award because the issuance of such an executive order would not prejudice Masco in any way.  Gaither's letter claims that Masco's choice not to timely issue the Executive Order, which would have allowed Prostyakov to seek work in Russia, caused Prostyakov to liquidate his equity interest in a bank in order to pay his ongoing living expenses.

On June 2, 2009, through its new legal counsel, Ogletree Deakins, Masco sent a check to Plopper in the amount of $33,286.59, representing the last amount Plopper claimed Masco owed Prostyakov in order to resolve the litigation over the Arbitration Award.  Plopper returned the uncashed check along with a letter indicating that Masco would need to address the outstanding amounts from the earlier arbitration and litigation in connection with Prostyakov's new demands outlined in Gaither's letter.  After denying any further liability outside of the amount claimed to be owing as a result of the previous litigation and unsuccessfully encouraging Prostyakov and his counsel to enter into

13

facilitative mediation to resolve all his claims, on August 22, 2008, Masco filed a motion to reopen the earlier litigation to allow it to make payment of the $33,286.59 into the court in order to satisfy the judgment which had been issued.  As noted at the beginning of this entry, Judge Sarah Evans Barker granted that motion in October of 2008 and entered an order of satisfaction of judgment.

Soon after the order of satisfaction was entered, Prostyakov filed for arbitration of his "new" claims, and Masco filed this lawsuit in an effort to prevent that arbitration from occurring.  Masco asks this court for a declaratory judgment determining that: (1) Arbitrator Hittle's award was final and binding on all parties; (2) the FAA's three month statute of limitations bars Prostyakov from seeking a modification or vacation of the previous award through his second request for arbitration; (3) Prostyakov has failed to satisfy any grounds for modifying the previous award; (4) Prostyakov cannot collaterally attack the award or the previous decisions of this court or the Seventh Circuit; and, (5) that Prostyakov's claim of an Indiana stautory violation is barred by the Indiana statute of limitations on such actions.

### The New Arbitration Claim

In his Notice of Arbitration, filed with the ICDR, Prostyakov describes his claim, in pertinent part, as follows:

> The claim made herein is for a breach of the Settlement Agreement from
> and after August 15, 2005 and is not subject to the Order of Satisfaction of

Judgment.  The delay in satisfaction of the Award was a continuous breach of the Settlement Agreement as made clear to Masco by Arbitrator Hittle. The Arbitrator in case No. 50T 19900125 03 measured Prostyakov's damages at an annual salary of $180,000 which was Prostyakov's salary under an employment agreement that was voided due to the damaging entry in Prostyakov's Labor Book.  Further, the arbitrator specifically measured the damages by a reasonable period of time for Prostyakov to have filed, prosecuted, and appealed his arbitration claims (three and one/half years). The arbitrator's calculation of damages is extended by the delays caused by Masco's breach of the "final and binding" provision of the Settlement Agreement, due to its unwarranted Motion to Vacate, its frivolous appeal, and its withholding of the Equitable Relief, which delays have damaged Prostyakov.  Therefore, Prostyakov claims damages for the period from August 15, 2005 (the date of the Award) to February 7, 2008 (the date of the delivery of the Equitable Relief) (the "damage Period") stated as 29 months, 23 days times $15,000 per month = $445,500, plus interest on unpaid salary earned for the damage Period.

   Moreover, the Settlement Agreement is to be interpreted pursuant to Indiana law.  Under Indiana law, an employer who discharges an employee and then wrongfully prevents the discharged employee from obtaining employment with any other person is liable for penal damages, stated as 3 x $445,500 = $1,336,500.  Indiana Code 22-5-3-1(a).

**Analysis**

Masco claims that this case is similar to the declaratory judgment action brought by the plaintiff in *Federated Rural Elec. Ins. Exchange v. Nationwide Mut. Ins. Co.,* 134 F.Supp.2d 923 (S.D. Ohio 2001).  In that case, Federated and Nationwide were parties to a series of reinsurance agreements which required the parties to enter into "final and binding" arbitration to resolve any disputes between them.  *Id*. at 925.  A dispute occurred between the two parties with regard to the agreements and, after arbitration proceedings, the arbitrator found in favor of Federated.  *Id.*  Nationwide did not challenge the award at

the time and paid the monetary award within a few months. *Id*. at 926. Four years later, Nationwide demanded a return of the monies it paid because, it argued, a recent Wisconsin intermediate appellate court opinion indicated that the arbitrators had misinterpreted Wisconsin law when deciding the arbitration. *Id*. After Nationwide demanded arbitration of its claim for repayment, Federated filed a declaratory judgment action seeking to enjoin Nationwide from "re-arbitrating" the more than four-year old award. *Id*.

The United States District Court for the Southern District of Ohio entered summary judgment in favor of Federated, finding that disregard of controlling law was not a basis under the FAA for challenging an arbitration award and any challenge to the earlier award was untimely in light of the three month limitation in the FAA for seeking modification or vacation of an award. *Id.* at 934. Clearly, the defining factor in the case was that Nationwide sought to have the very same dispute decided again based on a clarification of the applicable law. In fact, the Court described Federated's lawsuit as an attempt to prevent an appeal of the earlier award through a second arbitration, in violation of the finality provisions of the arbitration agreement. *Id*. at 928. No conduct or action of any of the parties subsequent to the first award gave rise to Nationwide's new arbitration request. Consequently, this court finds the case distinguishable from the circumstances existing in the case at bar. Here, it is Masco's conduct subsequent to the Arbitration Award for which Prostyakov seeks redress.

16

Prostyakov likens the current circumstances to those in *North River Ins. Co. v. Allstate Ins. Co.*, 866 F.Supp. 123 (S.D.N.Y. 1994), which also involved insurance companies who were signatories to reinsurance agreements. In *North River*, there had been a consolidated arbitration decided in 1992, affirmed by the New York state court in 1993, which found in favor of North River and other primary insurers with respect to the interpretation of the term "occurrence" in certain reinsurance agreements. *Id.* at 125. Allstate paid the primary insurers pursuant to the award, but then, in 1994, it again sought to arbitrate with regard to the term "occurrence" as used in policies that provided coverage for time periods different than those which had been the subject of the earlier consolidated arbitration. *Id*. at 124. North River filed an action for declaratory and injunctive relief, arguing that Allstate was collaterally estopped from further arbitration of the issue of how the term "occurrence" should be interpreted. *Id.*

Allstate successfully argued to then District Court Judge, Sonya Sotomayor, that the preclusive effect of the earlier arbitration award was an issue for an arbitrator to decide. *Id. at 132*. Recognizing that the issue of who decides the preclusive effect of a prior arbitration cannot be answered by reference to some bright line rule, Judge Sotomayor sided with the Second Circuit and most other jurisdictions which give great deference to the policy behind the FAA of requiring courts to enforce privately negotiated agreements to arbitrate and to interfere sparingly when the parties to a broad and exclusive arbitration provision seek to resolve a dispute. In doing so, she wrote:

17

>        Speaking in the context of procedural defenses, the Second Circuit observed:
>
> When one party to a dispute seeks to stay the other party's demand for arbitration by raising various defenses to arbitration before a district court, there is a considerable temptation for the court to pass on the validity of such defenses rather than to refer their resolution to an arbitrator. Determining the merits of such defenses may often appear to be a simple task that should not be delayed or deferred, and judges are, by training and temperament, prepared to decide the issues that come before them.
>
> These reactions, while understandable, are at odds with the policy considerations embodied in the Federal Arbitration Act, which favor the enforcement of arbitration agreements.

Id. at 129-130, *quoting Conticommodity Services, Inc. v. Philipp & Lion*, 613 F.2d 1222, 1224 (2d Cir. 1980).

       This court believes that Judge Sotomayor got it right. This court may share the suspicion, as expressed by Judge Barker in her order of October 28, 2008, entered in the earlier litigation, that Prostyakov's latest claims likely exceed any reasonable assessment of damages attributable to Masco's conduct. Nevertheless, to reach such a substantive decision would be wrong where, at least on its face, Prostyakov's Notice of Arbitration asserts liability on the part of Masco for conduct which post-dated the previous arbitration award. That previous award did nothing to end the parties' ongoing commitment to arbitrate any claim that one of the parties has for breach of the 1996 Settlement Agreement. In addition, the Seventh Circuit has made it clear that the federal courts should not "come to the rescue" by opening their doors to substantively decide a dispute between parties who have clearly agreed to have such disputes heard and decided by arbitrators. *Prostyakov v. Masco Corp.*, 513 F.3d 716, 723 (7th Cir. 2008); *Wise v. Wachovia Securities, LLC*, 450 F.3d 265, 269 (7th Cir. 2006). Only in the slimmest of

circumstances, when corruption or overreaching has occurred, will the courts interfere.

The convoluted history of the dispute between these parties has required this court to examine the circumstances presented more deeply than is typically necessary to determine whether or not a claim is arbitrable. However, after such examination, this court can now confidently state that the claim raised in Prostyakov's latest Notice of Arbitration does not fall in the category of narrow circumstances where court intervention is called for. Accordingly, an arbitrator will need to determine the substantive merit of the parties' arguments, including the preclusive effect of the prior arbitration award.

While Masco may be frustrated by the seemingly neverending need to address Prostyakov's complaints, its prior strategy and conduct prevents it from claiming complete innocence when it examines why it finds itself in the position it is in.

**Conclusion**

For the reasons set forth in this entry, Masco's Motion for Summary Judgment (Docket # 21) is **DENIED**.  Further, the "stay of arbitration" imposed by this court in its order of October 19, 2009, is **HEREBY LIFTED** and the proceedings pending before the ICDR may continue.

**SO ORDERED** this 5th  day of February 2010.

_____
RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana


Electronic Copies to:

John Kenyon Henning IV
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART
john.henning@ogletreedeakins.com

Nicholas E. Plopper
STEPHEN PLOPPER & ASSOCIATES
nick@sploplaw.com

Stephen Edwards Plopper
STEPHEN PLOPPER & ASSOCIATES
splopper@sploplaw.com

Kenneth B. Siepman
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART
kenneth.siepman@odnss.com